CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 2 0 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Criminal Case No. 7:05CR00028 |
| v. | ) | **MEMORANDUM OPINION** |
| MISSY SMITH, | ) | By: Hon. Glen E. Conrad |
| STACY SMITH, | ) | United States District Judge |
| Defendants. | ) | |

This case is before the court on the defendants Missy Smith's and Stacy Smith's motions for judgment of acquittal, and defendant Stacy Smith's motions for a new trial. Defendant Missy Smith filed one motion for judgment of acquittal; defendant Stacy Smith filed two motions for judgment of acquittal and two motions for a new trial.

## BACKGROUND

The defendants, Missy Smith and Stacy Smith, were charged in a superceding indictment of the grand jury on June 8, 2006. The indictment listed twenty-one conspirators, and was based on a conspiracy to distribute methamphetamine in Grayson and Carroll Counties, lasting until on or about March 1, 2006. Missy Smith and Stacy Smith were both charged in Count One of the indictment, with conspiracy to distribute or possess with intent to distribute over 500 grams of a mixture containing methamphetamine.

A jury trial was held in Roanoke, Virginia, from January 29, 2007 to January 31, 2007. The defendants did not request a Pinkerton instruction.[1] At the request of the government and both defendants, the court employed a special verdict form graduated according to quantity. Counsel did

---

[1] Pinkerton v. United States, 328 U.S. 640 (1946).

not object to the court's instructions. During the jury's deliberations, a note was sent to the court. The note asked, "[d]oes the amount of 500 grams listed on the verdict form refer to 500 grams distributed by the individual or 500 grams distributed by the conspiricy [sic] as a whole." The court and counsel agreed that the jury's question would not be answered, other than to refer the jury to the court's prior instructions. Each defendant was subsequently convicted of Count One. In completing the special verdict form, the jury found each defendant guilty of conspiring to distribute and possess with the intent to distribute more than 500 grams of a mixture or substance containing methamphetamine.

After the verdict was entered, the court sent a letter to counsel on February 5, 2007. The letter advised that an anonymous juror had contacted court staff, raising a concern that the juror "buckled under pressure and that her views were not fully considered" during deliberations as to defendant Stacy Smith. On February 17, 2007, the Assistant United States Attorney sent a letter to the court and defense counsel, advising that government witness Tabitha Isom had made statements about her testimony in front of other witnesses during a time when a number of witnesses were held together in the lockup.

On February 8, 2007, defendant Missy Smith filed a motion for judgment of acquittal. In her motion, she claims that the jury's verdict was not supported by sufficient evidence. Defendant Stacy Smith filed two motions for judgment of acquittal and one motion for a new trial on February 12, 2007. He filed an additional motion for a new trial on March 20, 2007. A hearing on the motions was held on April 4, 2007.

2

Case 7:05-cr-00028-GEC    Document 651    Filed 04/20/07    Page 2 of 13    Pageid#: 1525

# DISCUSSION

I.  **Motions for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29 provides that "the court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Federal Rule of Criminal Procedure 29 provides that the court may enter a judgment of acquittal after a jury has returned a verdict against a defendant. Fed. R. Crim. P. 29. However, this court must uphold the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). The United States Court of Appeals for the Fourth Circuit has defined "substantial evidence" as that which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Newsome, 322 F.3d 328, 333-34 (4th Cir. 2003) (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)). The court does not review witnesses' credibility, assuming that the jury resolved contradictions in testimony in the government's favor. United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998).

A.  Insufficient Evidence

1.  Missy Smith

Defendant Missy Smith claims that there was insufficient evidence to convict her of conspiring to possess with the intent to distribute and to distribute more than 500 grams of a mixture or substance containing methamphetamine. She bases this claim on several factors. First, no witness testified that he or she purchased methamphetamine from the defendant. Second, no independent witness testified that Missy Smith was selling methamphetamine. Finally, there was no testimony to describe how much of the amount attributed to the defendant was for her personal use.

3

In addition, the defendant claims that amounts potentially attributed to her under <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946), would be incorrect because there was no evidence that she was aware of the vast quantity of drugs distributed by higher-level dealers in the conspiracy.

The court's review of the evidence presented at trial leads it to conclude that there is substantial evidence to support the jury's verdict that Missy Smith conspired to distribute more than 500 grams of a substance containing methamphetamine. The court bases its conclusion on the testimony of a number of witnesses, including coconspirators Terry Bartlett, Martin Garcia, Gary Todd, Tabitha Isom, and Lisa Alley.

There was a great deal of testimony concerning the defendant's sale of methamphetamine. For example, codefendant Terry Bartlett testified that he had been to see Missy Smith at her home in Rural Retreat several times. On one visit, Martin Garcia brought Missy Smith one ounce of methamphetamine. At that time, Bartlett and Garcia saw people coming in and out of Missy Smith's trailer. On a subsequent visit, she paid for the methamphetamine. Another codefendant, Gary Todd, testified that he had given methamphetamine to Missy Smith and that Garcia had also brought her several ounces of methamphetamine. Todd related that Missy Smith refused to do hand-to-hand transactions, but told him that she was selling the methamphetamine. Garcia testified that he regularly brought methamphetamine to Missy Smith, over approximately six months. Codefendant Tabitha Isom also testified that she had dealt with Missy Smith, bringing an ounce of methamphetamine to Rural Retreat several times. Isom also described Missy Smith's method of selling, saying that Smith would leave drugs and money in places known to the purchaser, so as to avoid hand-to-hand transactions. The testimony of another codefendant, Lisa Alley, supported this account. Alley testified that she brought a half-ounce to an ounce of methamphetamine to Missy

4

Smith in Rural Retreat. Alley related that she stayed at Missy Smith's residence until she was paid, and noted people coming and going. Alley reported that Missy Smith would put drugs somewhere, and people would come to get the drugs and leave the money for Smith to pick up. Alley also said that she was paid by Missy Smith for the drugs at the end of the night. Alley further testified that Missy Smith told her she was selling methamphetamine.

Case Agent Dustin Harmon, of the Drug Enforcement Agency (DEA), testified that in his experience, he had never encountered a user going through one to two ounces of methamphetamine at once, and that possession of such amounts was consistent with distribution. Agent Jeff Robertson, a DEA Task Force Officer, also testified that one ounce or more of methamphetamine is consistent with distribution. Harmon also testified that Missy Smith told him she used as much as an "eight-ball," or one-eighth of an ounce, a day. She also said that she "shared" with other users. These amounts were not quantified in relation to the amounts she used.

Viewing the evidence above in the light most favorable to the government, the court concludes that there was substantial evidence to support the jury's verdict. Although no witness testified to purchasing methamphetamine from the defendant, multiple witnesses testified that they observed Missy Smith selling methamphetamine. The accounts of Todd, Isom, and Alley all described Missy Smith's method of selling methamphetamine, so as to avoid hand-to-hand transactions, in the same way. Although these witnesses were all codefendants, credibility determinations are left to the jury. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). In any event, the court finds the testimony of the witnesses extremely credible in light of the similarities in describing Missy Smith's sales. The sales attributed to Missy Smith by witnesses

could have themselves supported a finding of her personal involvement in transactions accounting for at least 500 grams of methamphetamine.

Furthermore, the court concludes that substantial evidence supports a finding of Missy Smith's guilt as to conspiracy to distribute 500 grams or more of a mixture containing methamphetamine under the principles described in Pinkerton. In Pinkerton v. United States, 328 U.S. 640 (1946), the United States Supreme Court held that a coconspirator can be liable for acts done by others in furtherance of the conspiracy; for such liability, the act must be "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." Id. at 647-48. In applying this principle to drug conspiracies, the Fourth Circuit has held that a court must determine the amount of drugs reasonably foreseeable to each coconspirator within the scope of his agreement to determine a statutory mandatory minimum. United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993).

First, the court concludes that substantial evidence showed that 500 grams or more of methamphetamine distributed by the conspiracy was attributable to Missy Smith using Pinkerton principles. Missy Smith dealt directly with Garcia, who Agent Harmon testified was one of the targets of the DEA's investigation. According to Garcia, Missy Smith had regular contact with him and obtained a substantial amount of methamphetamine. Missy Smith also obtained drugs from Isom and Alley, who were characterized as at least mid-level dealers in the conspiracy. Furthermore, Missy Smith had contact with other members of the conspiracy, including Bartlett and Todd. Based on these connections, the distribution of over 500 grams of methamphetamine by other members of the conspiracy was reasonably foreseeable as to Missy Smith.

Furthermore, the court notes that the verdict form allowed for a jury determination that each defendant was guilty of conspiring to distribute various amounts of methamphetamine: either more
6

than 500 grams; between 50 and 500 grams; or less than 50 grams. The defendants argued against any inclusion of more specific information implicating Pinkerton principles in the instructions. The jury sent a note to the court during deliberations, asking, "[d]oes the amount of 500 grams listed on the verdict form refer to 500 grams distributed by the individual or 500 grams distributed by the conspiricy [sic] as a whole." The court consulted with counsel about further instructions under Pinkerton, and both defense counsel specifically requested that such an instruction not be given.

For the foregoing reasons, the court concludes that substantial evidence supports the jury's finding that Missy Smith was guilty beyond a reasonable doubt of knowingly conspiring to distribute and possess with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine.

2. Stacy Smith

Stacy Smith claims that there was insufficient evidence to support a jury finding that he was guilty beyond a reasonable doubt of conspiring to possess with the intent to distribute or distribute more than 500 grams of a mixture or substance containing methamphetamine. Specifically, Stacy Smith claims that there is no evidence that he was aware of the large quantities of drugs distributed by other members of the conspiracy, and there is no evidence quantifying distributions by the defendant. Stacy Smith also notes that many of the witnesses against the defendant were receiving substantial assistance for their testimony, and that Stacy Smith never used the word "sold" when describing his own activities to law enforcement.

The court concludes that there is substantial evidence to support the jury's finding that Stacy Smith was guilty beyond a reasonable doubt. A number of witnesses testified as to Stacy Smith's involvement with methamphetamine. For example, Gary Todd testified that Stacy Smith assisted

7

Tabitha Isom, Smith's girlfriend, in her sales of methamphetamine. Martin Garcia, described by other witnesses as one of the leaders of the conspiracy, testified that Stacy Smith lived with Isom and helped her to sell methamphetamine, and that Isom also gave methamphetamine to Smith. Justin Amburn, who was not charged in this conspiracy, testified that he had bought methamphetamine from Stacy Smith, although most of Amburn's purchases were from Isom. Isom also testified that Stacy Smith sold methamphetamine and had some of his own customers, and that he helped her to sell methamphetamine, as well. Kimberly Perry said that she saw Stacy Smith selling methamphetamine, and that his girlfriend, Isom, was a main methamphetamine dealer in the area. Coconspirator Lisa Alley testified that she sold amounts up to one ounce to Stacy Smith, at least ten times. Timothy Crigger, another member of the conspiracy, testified that he had bought methamphetamine from Stacy Smith when Smith was living with Isom. Melanie Gibson, who was not named in the indictment, also testified as to Smith's involvement in the conspiracy. Joseph Mahaffey testified that he had purchased methamphetamine from Stacy Smith. Furthermore, Agent Robertson testified that Stacy Smith told him he had "moved" methamphetamine.

Based on the testimony at trial, and viewing the evidence in the light most favorable to the government, there was substantial evidence to support a finding of Stacy Smith's guilt beyond a reasonable doubt. A number of witnesses, who the jury evidently found to be credible, testified that they purchased methamphetamine from Stacy Smith himself. See Saunders, 886 F.2d at 60. Furthermore, there was substantial evidence to support a finding that Stacy Smith could have reasonably foreseen that the conspiracy would distribute more than 500 grams of methamphetamine.

As a number of witnesses testified, including Stacy Smith himself, Smith was the boyfriend of Isom, and he resided with her for some time in a trailer on Hebron Road. A number of witnesses

8

testified about Isom's sales of methamphetamine, and her involvement with other members of the conspiracy. Therefore, there is substantial evidence to support the finding that, even if Stacy Smith did not himself sell 500 grams or more of methamphetamine, he had firsthand knowledge that such an amount was reasonably foreseeable to the conspiracy. The court also reiterates that the jury was given choices on the verdict form as to the quantity of drugs for which each defendant was responsible beyond a reasonable doubt. Counsel specifically declined a Pinkerton instruction after the jury's question. Therefore, the court will deny the defendant's motion for judgment of acquittal on these grounds.

B.   Jury Impropriety

Defendant Stacy Smith has filed a motion for judgment of acquittal, alleging jury impropriety based upon communications from a juror made to the court after the trial. The juror stated concerns that she "buckled under pressure and that her views were not fully considered" as to defendant Stacy Smith. The juror felt that a verdict was reached too quickly, and other jurors would not listen to her concerns. However, the juror also stated that she was unsure that the verdict would have been different, despite these reservations.

The court concludes that these concerns do not present grounds to overturn the verdict of the jury. The Fourth Circuit has held that, "following dispersal of a jury, once it has been dismissed, if we allow such attacks by individual members on the composite verdict of all twelve we can expect an unsettling of the system out of all proportion to any expectable improvement in the administration of justice." United States v. Barber, 668 F.2d 778, 786 (4th Cir. 1982) (internal citations omitted). The facts of Barber are more extreme than those of the instant case. In Barber, two jurors independently expressed that they were disturbed by the verdict that had been reached.

9

One juror told the judge that he did not think the defendant "should have been called guilty the way that he was;" another juror told a newspaper reporter that she had been threatened by the jury foreman. Id. at 786. As the Court noted, however, the opportunities for abuse that would arise if jurors could question the verdict after it had been entered would be greater than any positive consequences of investigating such claims. Id. at 786-87. The Fourth Circuit has also noted that "[r]equests to impeach jury verdicts by post-trial contact with jurors are disfavored." United States v. Gravely, 840 F.2d 1156, 1159 (4th Cir. 1988). Based on these principles, the court concludes that the defendant's request to interview the juror must be denied, and the defendant's motion for judgment of acquittal on these grounds must also be denied.

## II. Motions for New Trial

Federal Rule of Criminal Procedure 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The United States Court of Appeals for the Fourth Circuit has observed that a trial court "should exercise its discretion to grant a new trial sparingly, and that it should do so only when the evidence weighs heavily against the verdict." United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations omitted).

### A. Jury Impropriety

Defendant Stacy Smith has filed a motion for a new trial, based on concerns of jury impropriety, as set forth in post-trial contact with the court from an anonymous juror.[2] For the

---

[2]Although the defendant's motion is entitled "Motion for Judgment of Acquittal," the motion cites Federal Rule of Criminal Procedure 33, which pertains to a motion for a new trial. See Fed. R. Crim. P. 33. The defendant's motion also states that it moves the court to grant a new trial. To the extent that the motion is intended as a motion for judgment of acquittal, it must be denied for the reasons discussed previously.

10

reasons discussed above in regards to the defendant's motion for judgment of acquittal, the court concludes that this motion must be denied. The interests of justice do not require the granting of a new trial on these grounds, and the evidence does not weigh heavily against the jury's verdict. Furthermore, the court notes that the concerned juror stated that she was not certain that the ultimate jury verdict would have been affected.

B. <u>Newly Discovered Evidence</u>

Defendant Stacy Smith has also filed a motion for a new trial based on newly discovered evidence.[3] Stacy Smith relies on a letter written by the Assistant United States Attorney on February 14, 2007. The letter revealed that Tabitha Isom, a witness for the government, made statements about her testimony in front of witnesses Kimberly Perry and Lisa Alley. According to the defendant, the letter supports a finding that Isom perjured herself on the second day of trial when she responded "no," after being asked whether she had discussed testimony with codefendants. Counsel argues that if he had known of this perjury, he could have confronted Isom and recalled Perry and Alley.

The defendant must establish five things in order to be granted a new trial: (1) the evidence must be newly discovered, since the trial; (2) facts must be alleged so that the court can infer diligence by the defendant; (3) the evidence cannot be merely cumulative or impeaching; (4) the evidence must be material to the issues; and (5) the evidence must be "of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." <u>United States v. Custis</u>, 988 F.2d 1355, 1359 (4th Cir. 1993). There are several reasons that the evidence upon which Stacy Smith bases his motion for a new trial does not meet these standards.

---

[3]Part of this motion, ¶1, was withdrawn by the defendant at the hearing on this matter.
11

Case 7:05-cr-00028-GEC   Document 651   Filed 04/20/07   Page 11 of 13   Pageid#: 1534

First, the evidence is merely impeaching. As stated in the motion and by counsel at the hearing, this evidence would have been used to impeach the testimony of Isom, Perry, and Alley. Although impeaching evidence might, in "rare" cases, justify the granting of a new trial, such evidence would have to "go so directly to the interest of the prosecution witness that, if his testimony was essential to the prosecution, a new trial should be awarded in which the interest of the witness may be shown." United States v. McCoy, 478 F.2d 846, 847 (4th Cir. 1973). However, Isom's statements do not constitute one of these "rare" cases.

Furthermore, the court concludes that the information is not of such a nature that it is material or would produce an acquittal. At the hearing, Stacy Smith's counsel had an opportunity to question Isom and Perry. Isom was asked why she did not disclose her remarks, which consisted of comments such as "I can't believe that he asked me about that letter I wrote to you [Alley]," and "I can't believe he asked me about that gun charge." Isom claimed that she was asked whether she "discussed" her testimony with anyone, and she pointed out that there was no discussion because she just made several statements, to which no one responded. At the hearing, Perry stated that she did not remember if Isom said anything while they were in the lockup together; at the trial Perry had testified that she did not discuss her testimony with anyone. The court finds no inconsistencies in Perry's testimony. Based on this information, and based on the thorough cross-examinations of Isom, Perry, and Alley already conducted at trial, the court concludes that this new evidence was collateral and insignificant. Counsel's knowledge of these statements during the trial would not have resulted in acquittal. Therefore, the motion for new trial will be denied.

## CONCLUSION

For the foregoing reasons, the defendants' motions for judgment of acquittal and a new trial will all be denied. The court concludes that there was sufficient evidence to support the jury's finding that Missy Smith and Stacy Smith were guilty beyond a reasonable doubt of conspiring to distribute and possess with intent to distribute over 500 grams of a mixture containing methamphetamine. In addition, the court concludes that Stacy Smith is not entitled to a juror interview or judgment of acquittal on the grounds of jury impropriety. Finally, the court concludes that Stacy Smith is not entitled to a new trial based on jury impropriety or newly discovered evidence.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of April, 2007.

/s/ Jack Conrad

United States District Judge